IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N D I C T M E N T |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 5:19 CR 349 |
| | ) | Title 18, United States Code, |
| THOMAS G. O'LEAR, | ) | Sections 1035(a)(1), 1347 and 2 |
| | ) | |
| Defendant. | ) | JUDGE POLSTER |

FILED
2019 JUN -4 PM 12: 08
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

I.     GENERAL ALLEGATIONS

At all times relevant to this Indictment:

A.     <u>Defendant and his Corporation</u>

1.     Defendant THOMAS G. O'LEAR was a Radiography Technologist, licensed with the American Registry of Radiologic Technologists.

2.     Defendant was the President of Portable Radiology Services ("PRS"), incorporated in Ohio as a domestic limited liability company on or about March 4, 2005.

3.     PRS provided radiological examination services, including x-ray radiography ("x-rays"), ultrasounds and electrocardiograms.

4.     PRS provided portable x-rays to individuals residing in nursing homes, skilled nursing facilities and long-term care facilities (collectively "nursing facilities") which Defendant entered into service contracts with, all located within the Northern District of Ohio, Eastern Division.

5.     Defendant controlled PRS' business operations, including billing.

6. PRS became a participating provider with Medicaid and Medicare in March and August of 2005, and Defendant was thereafter required to abide by the rules and regulations of these programs.

7. Defendant billed Medicare, the Ohio Department of Medicaid ("ODM") and Medicaid Managed Care Organizations ("MCOs"), for providing x-rays, as well as for related services and costs, such as transporting x-ray equipment to sites of service (collectively "x-ray related services").

8. PRS operated out of the following locations within the Northern District of Ohio, Eastern Division:

    a. 8948 Kennemer Circle NW, North Canton, Ohio 44720;

    b. 9191 Coblentz Avenue NW, Uniontown, Ohio 44685;

    c. 4445 20th Street NW, Canton, Ohio 44708; and

    d. 13353 Snow Road, Cleveland, Ohio 44142.

B.   Health Care Benefit Programs

9. The term "health care benefit program," as defined in Title 18, United States Code, Section 24, meant any public or private plan or contract, affecting commerce, under which any medical benefit, item or service was provided to any individual, and included any individual or entity who was providing a medical benefit, item or service for which payment could have been made under the plan or contract.

### The Medicaid Program

10. The Medicaid program, established by Congress in 1965, provided medical insurance coverage to individuals whose incomes were too low to meet the costs of necessary medical services. Individuals who received benefits under Medicaid were commonly referred to

as Medicaid "beneficiaries." Approximately 60% of the funding for Ohio's Medicaid program came from the federal government. After July 2013, ODM managed the Ohio Medicaid program, which before that was administered by the Ohio Department of Job and Family Services. ODM received, reviewed, and obtained formal authority to make payment of Medicaid claims submitted to it by health care providers.

11. Medicaid provided reimbursement to medical providers for services they rendered to beneficiaries. In order to be reimbursed by Medicaid, a provider was required to enter into a "provider agreement" with ODM in which the provider agreed to comply with all applicable state and federal statutes, regulations and guidelines.

12. ODM contracted with MCOs, which were health insurance companies that provided coordinated health care to Medicaid beneficiaries. The MCOs contracted with healthcare providers, including hospitals, doctors, and others to coordinate care and provide the health care services for each respective MCO's enrolled Medicaid beneficiaries. ODM distributed combined state and federal Medicaid funding to MCOs, which then paid providers for treatment of Medicaid beneficiaries.

13. Eligible beneficiaries could obtain Medicaid coverage directly through ODM, also known as fee-for-service coverage, or join an MCO to manage their benefits.

14. Pursuant to the rules and regulations of the Ohio Medicaid Program, including ODM and MCOs, Medicaid only paid for services that were actually rendered by qualified individuals, that were medically necessary, and that were provided in accordance with Federal and State laws, rules, and regulations.

15. Under the Ohio Medicaid Program, provider services were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's medical condition. Individuals providing these services were required to have the appropriate training, qualifications, and licenses to provide such services. Among other things, including actually rendering the services, providers were required to document the services provided; document the date of service; identify the provider who performed the service; and identify the clinic, physician office, or group practice where the provider provided the service. Providers conveyed this information to ODM or an MCO by submitting claims using billing codes and modifiers. To be reimbursed from the Ohio Medicaid Program for provided services, the services had to be reasonable, medically necessary, documented, and actually provided as represented to Medicaid. Providers were required to maintain patient records to verify that the services were provided as represented on the claim form to Medicaid.

## The Medicare Program

16. The Medicare program was a federal health care program providing benefits to persons who were over the age of 65, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were commonly referred to as "beneficiaries."

17. The Medicare program included coverage under four components: hospital/inpatient insurance ("Part A"); medical/outpatient insurance ("Part B"); alternate Medicare Advantage Plan ("Part C"); and prescription drug insurance ("Part D"). Part B of the Medicare program covered medically necessary services involving physician office services, outpatient services, and medical equipment, supplies and other services, including portable x-ray

4

related services. CMS administered Medicare Part B through private insurance companies called "carriers."

18. Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to a Medicare beneficiary. This payment occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

19. Providers obtained Medicare Part B reimbursement from carriers pursuant to written provider agreements, on the basis of reasonable charges for covered services provided to beneficiaries. The carriers received, processed, and paid or rejected those claims according to Medicare rules, regulations, and procedures.

20. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures, and billing rules and regulations. CMS notified Medicare providers of billing criteria and service coverage through Medicare policy manuals, carrier supply manuals, local coverage determinations, newsletters published on the internet and through sections of the Social Security Act, and/or through other means of communication.

21. In the Medicare program, participating providers agreed to bill only for services the provider actually rendered, that were medically necessary to diagnose and treat illness or injury,

that met the requisite criteria, and for which the provider maintained adequate supporting documentation.

## Medical Billing and Coding

22. For billing purposes, Medicaid and Medicare assigned each beneficiary a unique health insurance billing number.

23. Medical providers and health care benefit programs used well-known and standard insurance processing codes to identify certain medical diagnoses and medical treatments or procedures. The American Medical Association assigned and published five-digit codes, known as Current Procedural Terminology ("CPT") codes. The procedures and services represented by the CPT codes were health care benefits, items, and services within the meaning of 18 U.S.C. § 24(b). They included codes for office visits, diagnostic testing and evaluation, and other services.

24. Health care benefit programs used CPT codes to evaluate and determine whether to issue or deny payment. Each health care benefit program established a fee reimbursement for each service described by a CPT code.

25. Medical providers recorded diagnoses and medical procedures on a standard claim form known in the industry as the CMS 1500 form, which was sent to the patients' health care benefit program. CPT codes and modifiers were designated on the CMS 1500 claim form by the health care provider and, then, submitted either by mail or electronically to the health care benefit program for payment. By submitting claims using these codes, providers represented to Medicare, Medicaid, and other insurances that the services depicted in the codes were, in fact, performed or provided.

6

26. Providers who provided services to Medicaid and/or Medicare beneficiaries used a number assigned to the patient to fill out claim forms. The claim forms were submitted by the provider to make claims for payments from Medicaid and/or Medicare. Medicare carriers, ODM, and/or MCOs processed each health insurance claim form and issued payment to the provider for the approved services. Providers submitted claims in paper format, or by electronic means.

27. Health care claim forms, both paper and electronic, contained certain client information and treatment procedure codes. The treatment billing codes described various medical services in the language the providers themselves used. Health care programs had established payment schedules based on the procedure codes billed by the provider. By designating a certain code, the provider certified to the health care program that a given treatment was actually rendered in compliance with the code requirements and was medically necessary. These treatment procedure codes were well known to the medical community, providers, and health care insurance companies.

28. Medicare carriers, ODM, and MCOs used the written claim forms and/or electronic invoices to establish the validity of health care claims entitled to payment. A provider who submitted claims to Medicare carriers, ODM, and MCOs certified that the treatment was provided by a qualified individual, actually provided to the client as documented, and was medically necessary for the health of the client.

29. CPT Code R0070 was designated for the transportation of portable x-ray equipment.

30. CPT Code Q0092 was designated for the set-up of portable x-ray equipment.

31. Codes used to designate x-ray services included: 71020; 73030; 73130; 73610; 72100; 73080; 72100; and 73630.

## II. SCHEME TO DEFRAUD

32. From in or around January 1, 2013 through in or around December 31, 2017, Defendant THOMAS G. O'LEAR did devise and intend to devise a scheme and artifice to defraud and to obtain money from health care benefit programs by means of false and fraudulent pretenses, representations and promises.

33. It was part of the scheme to defraud that at various times:

    a. Defendant submitted false claims to Medicare and the Ohio Medicaid Program for services provided to beneficiaries at nursing facilities that PRS did not in fact provide, including:

        i. Billed, on approximately 151 occasions, for having provided x-ray related services to beneficiaries on dates after the beneficiaries had died;

        ii. Billed for having provided x-ray related services to beneficiaries on dates when the beneficiaries were hospitalized or in hospice;

        iii. Billed for having provided x-ray related services to beneficiaries on dates after the nursing facilities had terminated their contractual relationships with PRS;

        iv. Billed claiming that x-ray related services performed on single dates of service were performed separately on various dates, requiring reimbursement for transportation on each date;

        v. Billed for having provided x-ray related services when PRS and the nursing facilities had no documentation demonstrating that the services occurred;

8

vi. Billed for x-ray related services and created false radiology order forms with forged signatures of physician D.D. and radiology technologist C.D. to conceal that the services billed for were not provided.

b. Defendant over-billed Medicare and the Ohio Medicaid Program for services that PRS provided to beneficiaries at nursing facilities by billing one x-ray examination image as more than one image.

c. Defendant fraudulently billed the Ohio Medicaid Program and Medicare approximately $3,856,862 for the claims described in paragraph 33 (a)-(b), and the Ohio Medicaid Program and Medicare paid Defendant approximately $2,007,760 for these claims.

## COUNTS 1 - 25
(Health Care Fraud, 18 U.S.C. § 1347 and § 2)

The Grand Jury Charges:

34. Paragraphs 1 through 33 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

35. From on or about January 1, 2013 and continuing to on or about December 31, 2017, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant THOMAS G. O'LEAR did knowingly and willfully devise and intend to devise, execute and attempt to execute the above described scheme and artifice to defraud a health care benefit program, that is Medicare and the Ohio Medicaid Program, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by and under the control of a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services.

36. On or about the following dates, in the Northern District of Ohio, Eastern Division, Defendant did execute and attempt to execute the scheme described above by submitting the claims for reimbursement set forth below:

a. Billed for providing x-ray related services to beneficiaries on dates of service that were after the beneficiaries had died:

| Count | Beneficiary | Service Date | Date Claim Submitted | Claim Submitted to | Amount Claimed | Amount Paid | Procedures Billed | Date of Beneficiary Death |
|---|---|---|---|---|---|---|---|---|
| 1 | P.G. | 9/07/15 | 9/29/15 | Medicaid | $133.00 $80.00 | $131.02 $22.92 | R0070 Transport of x-ray equipment 71020 Chest x-ray | 08/23/15 |
| 2 | A.O. | 7/02/17 | 10/13/17 | Medicaid | $175.00 $80.00 | $131.02 $22.92 | R0070 Transport of x-ray equipment 73030 Shoulder x-ray | 06/14/14 |
| 3 | C.H. | 11/22/17 | 11/24/17 | Medicaid | $133.00 $80.00 | $131.02 $22.92 | R0070 Transport of x-ray equipment 73130 Hand x-ray | 11/18/17 |
| 4 | M.T. | 8/17/16 | 8/19/16 | Medicare | $133 $28 $77 | $0 $0 $0 | R0070 Transport of x-ray equipment Q0092 Set-up of x-ray equipment 71020 Chest x-ray | 8/13/16 |

b. Billed for having provided x-ray related services to beneficiaries on dates when the beneficiaries were hospitalized or in hospice:

| Count | Beneficiary | Service Date | Date Claim Submitted | Claim Submitted to | Amount Claimed | Amount Paid | Procedures Billed | Date Range Beneficiary in Hospital / Hospice Care |
|---|---|---|---|---|---|---|---|---|
| 5 | C.W. | 5/21/17 | 7/05/17 | Medicaid | $175 $80.00 | $131.02 $21.35 | R0070 Transport of x-ray equipment 73630 Foot x-ray | 05/17/17 – 05/28/17 |
| 6 | C.W. | 5/26/17 | 7/5/17 | Medicaid | $175.00 $80.00 | $131.02 $22.92 | R0070 Transport of x-ray equipment 73080 Elbow x-ray | 05/17/17 – 05/28/17 |
| 7 | M.T. | 7/15/16 | 8/5/16 | Medicare | $133 | $103.75 | R0070 Transport of x-ray equipment | 7/13/16 – 8/13/16 |

| Count | Beneficiary | Service Date | Date Claim Submitted | Claim Submitted to | Amount Claimed | Amount Paid | Procedures Billed | |
|---|---|---|---|---|---|---|---|---|
| | | | | | $28 | $18.32 | Q0092 Set-up of x-ray equipment | |
| | | | | | $77 | $20.65 | 71020 Chest x-ray | |
| 8 | M.T. | 7/19/16 | 8/5/16 | Medicare | $133 | $103.75 | R0070 Transport of x-ray equipment | 7/13/16 – 8/13/16 |
| | | | | | $28 | $18.32 | Q0092 Set-up of x-ray equipment | |
| | | | | | $77 | $20.65 | 71020 Chest x-ray | |
| 9 | M.T. | 7/23/16 | 8/5/16 | Medicare | $133 | $103.75 | R0070 Transport of x-ray equipment | 7/13/16 – 8/13/16 |
| | | | | | $28 | $18.32 | Q0092 Set-up of x-ray equipment | |
| | | | | | $77 | $20.65 | 71020 Chest x-ray | |
| 10 | M.T. | 7/27/16 | 8/5/16 | Medicare | $133 | $103.75 | R0070 Transport of x-ray equipment | 7/13/16 – 8/13/16 |
| | | | | | $28 | $18.32 | Q0092 Set-up of x-ray equipment | |
| | | | | | $77 | $20.65 | 71020 Chest x-ray | |
| 11 | M.T. | 8/12/16 | 8/26/18 | Medicare | $133 | $103.75 | R0070 Transport of x-ray equipment | 7/13/16 – 8/13/16 |
| | | | | | $28 | $18.32 | Q0092 Set-up of x-ray equipment | |
| | | | | | $77 | $20.65 | 71020 Chest x-ray | |

  c. Billed for providing x-ray related services to beneficiaries at nursing facilities on dates of service after the nursing facilities had terminated their contractual relationships with PRS:

| Count | Beneficiary | Service Date | Date Claim Submitted | Claim Submitted to | Amount Claimed | Amount Paid | Procedures Billed |
|---|---|---|---|---|---|---|---|
| 12 | D.U. | 7/06/17 | 7/28/17 | Medicaid | $175.00 | $131.02 | R0070 Transport of portable x-ray equipment |
| | | | | | $80.00 | $21.35 | 73610 Ankle x-ray |

| 13 | A.S. | 7/13/17 | 7/28/17 | Medicare | $77.00 | $12.42 | 71020 Chest x-ray |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | $175.00 | $108.45 | R0070 Transport of portable x-ray equipment |
| | | | | | $28.00 | $18.37 | Q0092 Set up portable x-ray equipment |
| 14 | A.S. | 7/13/17 | 7/31/17 | Medicaid | $175.00 | $22.57 | R0070 Transport of portable x-ray equipment |
| | | | | | $77.00 | $3.17 | 71020 Chest x-ray |
| | | | | | $28.00 | $4.68 | Q0092 Set up portable x-ray equipment |

      d.      Billed claiming that x-ray related services performed on single dates of service were performed separately on various dates, requiring reimbursement for transportation on each date:

| Count | Beneficiary | Service Date | Date Claim Submitted | Claim Submitted to | Amount Claimed | Amount Paid | Procedure Billed | Actual Service Date |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 15 | B.S. | 11/16/17 | 12/15/17 | Medicaid | $175.00 | $22.57 | R0070 Transport of portable x-ray equipment | 11/18/17 |
| 16 | B.S. | 11/16/17 | 12/01/17 | Medicare | $175.00 | $108.45 | R0070 Transport of portable x-ray equipment | 11/18/17 |
| 17 | B.S. | 11/20/17 | 12/15/17 | Medicaid | $175.00 | $22.57 | R0070 Transport of portable x-ray equipment | 11/18/17 |
| 18 | B.S. | 11/20/17 | 12/01/17 | Medicare | $175.00 | $108.45 | R0070 Transport of portable x-ray equipment | 11/18/17 |

      e.      Billed for having provided x-ray related services at nursing facilities when PRS and the nursing facilities had no documentation demonstrating that the services occurred:

| Count | Beneficiary | Service Date | Date Claim Submitted | Claim Submitted to | Amount Claimed | Amount Paid | Procedures Billed |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 19 | J.P. | 10/11/15 | 12/15/15 | Medicaid | $90.00 | $27.02 | 72100 Spine x-ray |
| | | | | | $133.00 | $131.02 | R0070 Transport of portable x-ray equipment |

| 20 | P.G. | 3/29/17 | 04/26/17 | Medicaid | $175.00 | $131.02 | R0070 Transport of portable x-ray equipment |
|    |      |         |          |          | $133.00 | $103.75 | 73630 Foot x-ray |

f. Over-billed Medicare and the Ohio Medicaid Program for services that PRS provided to beneficiaries at nursing facilities by billing one x-ray examination as more than one image:

| Count | Beneficiary | Service Date | Date Claim Submitted | Claim Submitted to | Amount Claimed | Amount Paid | Procedure Billed |
|---|---|---|---|---|---|---|---|
| 21 | A.B. | 3/19/15 | 4/29/15 | Medicaid | $77 | $25.69 | 71020 Chest x-ray, two views |
| 22 | D.U. | 8/10/15 | 8/18/15 | Medicaid | $80 | $25.69 | 71020 Chest x-ray, two views |
| 23 | E.S. | 06/09/17 | 6/16/17 | Medicare | $77 | $12.42 | 71020 Chest x-ray, two views |

g. Billed for x-ray related services and created false radiology order forms with forged signatures of physician D.D. and radiology technologist C.D. to conceal that the services billed for were not provided:

| Count | Beneficiary | Service Date | Date Claim Submitted | Claim Submitted to | Amount Claimed | Amount Paid | Procedures Billed |
|---|---|---|---|---|---|---|---|
| 24 | A.D. | 5/26/16 | 6/27/16 | Medicaid | $77.00 | $5.04 | 71020 Chest x-ray |
|    |      |         |         |          | $133.00 | $26.47 | R0070 Transport of portable x-ray equipment |
|    |      |         |         |          | $28.00 | $0.00 | Q0092 Set up portable x-ray equipment |
| 25 | A.D. | 5/26/16 | 5/27/16 | Medicare | $77.00 | $20.65 | 71020 Chest x-ray |
|    |      |         |         |          | $133.00 | $103.75 | R0070 Transport of portable x-ray equipment |
|    |      |         |         |          | $28.00 | $18.32 | Q0092 Set up portable x-ray equipment |

All in violation of Title 18, United States Code, Sections 1347 and 2.

COUNT 26
(False Statements Relating to Health Care Matters, 18 U.S.C. § 1035(a)(1) and § 2)

The Grand Jury further charges:

37. The Grand Jury re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 31 of the Indictment as if fully set forth herein.

38. From in or around July 16, 2016 and continuing thereafter to in or around March 24, 2017, in the Northern District of Ohio, Eastern Division, Defendant THOMAS G. O'LEAR did knowingly and willfully falsify, conceal and cover up by trick, scheme, and device material facts, in connection with the delivery of and payment for health care benefits, items and services involving a health care benefit program, as defined in 18 U.S.C. § 24(b), that is, Defendant created false documentation in the form of radiology order forms with forged signatures of physician D.D. and radiology technologist C.D., to conceal the fact that he had submitted false and fraudulent Medicaid and Ohio Medicaid Program claims for x-ray related services that were not provided to beneficiaries.

In violation of Title 18, United States Code, Sections 1035(a)(1) and 2.

FORFEITURE

The Grand Jury further charges:

39. The allegations of Counts 1-26 are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7). As a result of these offenses, Defendant THOMAS G. O'LEAR shall forfeit to the

United States all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses.

A TRUE BILL.

Original document – Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.